## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA

JAY CONNOR, on behalf of himself
and others similarly situated,

      Plaintiff,

v.

OPTIM HEARING, LLC and
VOCODIA FL, LLC

      Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION FILE NO. 4:23-cv-358

_____/

## PLAINTIFF'S OPPOSITION TO
## OPTIM HEARING, LLC'S MOTION TO DISMISS

The Court should deny the defendant Optim Hearing, LLC's ("Optim")

motion to dismiss as Mr. Connor sufficiently alleges Optim's involvement in and

vicarious liability for the violative telemarketing calls that Mr. Connor received

promoting Optim hearing aid goods and services. Specifically, Plaintiff alleges that

Optim (1) expressly contracted with Vocodia FL, LLC ("Vocodia") for Vocodia to

make telemarketing calls on its behalf; (2) dictated the content of the telemarketing

calls at a minimum by providing Vocodia an Optim telephone number to transfer

calls to Optim; (3) determined to whom Vocodia could make the calls and actually

participated in Vocodia' telemarketing calls to the extent it had its own employees

standing by to pitch Optim's services to consumers who received the prerecorded

calls. Notwithstanding, Optim attempts to weaponize the fact that discovery hasn't meaningfully occurred to assert that the Plaintiff hasn't sufficiently alleged enough about the innerworkings of the relationship between Optim and Vocodia to proceed on his claim of vicarious liability. However, at this stage of the proceedings, Plaintiff isn't expected to know or plead more about the precise contours of Optim's relationship with its hired telemarketers, and Optim is sufficiently on notice of the Plaintiff's vicarious liability claim against it to mount a defense. This case should proceed to discovery to determine if Optim is liable for the pre-recorded telemarketing calls that they hired Vocodia to send.

## BACKGROUND AND PLAINTIFF'S ALLEGATIONS

As the Supreme Court explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020). This case involves a campaign by Optim to market its services through the use of a telemarketing campaign, including telephone calls involving pre-record messages,

despite not having the requisite consent to contact those individuals. Optim hired Vocodia to transmit the calls at issue. The Plaintiff also brings this putative class action pursuant to the South Carolina Telephone Privacy Protection Act ("SCTPPA"), S.C. Code § 37-21-10, *et seq*. for contacting numbers that were on the Do Not Call Registry.

Mr. Connor has alleged that Optim hired Vocodia to transmit the calls at issue. *See* Amended Complaint at ¶ 3. Mr. Connor's residential telephone number is (843) 557-XXXX, and has been on the National Do Not Call Registry since 2009. *Id.* at ¶ 28-30. Despite that, the Plaintiff received pre-recorded calls from Vocodia for Optim on October 10 and November 28, 2023 and each call started with a pre-recorded message stated that the call was being made "because our records indicate you or someone from your household are suffering from hearing issues. Is this correct?" *Id.* at ¶ 32-33.

The November 28, 2023 call came from 803-620-6881 and at least one website has identified calls from that number as a "hearing aid scam". *Id.* at ¶ 40. Optim Hearing's hearing aids were then offered to the Plaintiff by Optim. *Id.* at ¶ 41. They confirmed that they were based out of Savannah, GA. *Id.* at ¶ 42. The Plaintiff then received an e-mail regarding the offer from philip.kennedy@optimhearing.com. *Id.* at ¶ 43. Since the filing of the lawsuit Optim

Hearing has produced a contract with Vocodia claiming that they engaged in the calling conduct. *Id.* at ¶ 47.

## STANDARD

In considering a motion to dismiss filed based on Rule 12(b) of the Federal Rules of Civil Procedure, a court must determine whether a plaintiff's "factual allegations are enough to raise the right to relief about the speculative level, on the assumption that all the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). In making this determination, a court must construe the complaint in a light most favorable to the plaintiff. *Christopher v. Harbury*, 536 U.S. 403, 406, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002). Furthermore, all facts alleged by the plaintiff must be accepted as true. Id. at 406. When evaluating a motion to dismiss, the issue is not whether a plaintiff will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Little v. City of North Miami*, 805 F.2d 962, 965 (11th Cir. 1986). The threshold is "exceedingly low" for a complaint to survive a motion to dismiss. *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 703 (11th Cir. 1985).

# ARGUMENT

## I. Even without the Aide of Discovery, the Plaintiff can Demonstrate that Optim Hearing may be Vicarious Liability for Vocodia's Conduct.

"[A] party may be liable under the TCPA in accordance with tort-related vicarious liability rules," including actual authority, apparent authority, and ratification. *Klein v. Just Energy Grp., Inc.*, No. 14-1050, 2016 U.S. Dist. LEXIS 84447, at *27 (W.D. Pa. June 29, 2016) (citing *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 674 (2016)); *see also In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6588 (F.C.C. 2013). "The existence of an agency relationship is normally one for the trier of fact to decide." *Carlson v. FedEx Ground Package Sys.*, 787 F.3d 1313, 1318 (11th Cir. 2015); *see, e.g., Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 660 (4th Cir. 2019) (affirming TCPA vicarious liability jury verdict).

An agency relationship "arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (2006); *see also Krakauer*, 925 F.3d at 659-660 (stating the same and citing the Restatement). "Once such a relationship is formed, 'traditional vicarious liability rules ordinarily make principals . . . vicariously liable for acts of their agents . . . in the scope of

5

their authority.'" *Id.* at 660 (quoting *Meyer v. Holley*, 537 U.S. 280, 285-86, 123 S. Ct. 824, 154 L. Ed. 2d 753 (2003)). "An essential element of agency is the principal's right to control the agent's actions", but this concept of control "embraces a wide spectrum of meanings", including "what the agent shall and shall not do, in specific or general terms." Restatement (Third) of Agency § 1.01 cmt f. "A principal's control over an agent will as a practical matter be incomplete because no agent is an automaton who mindlessly but perfectly executes commands." *Id.*

For TCPA claims specifically, there is a low bar to pleading vicarious liability, as a plaintiff is *not expected* to allege "facts suggesting that" the defendant: (1) "instructed" the putative agent "to make the call to" the plaintiff, (2) "had any authority over the time, means and manner of" the putative agent's solicitations, or (3) "had the ability to issue instructions … on these subjects." *Dolemba*, 213 F. Supp. 3d at 997 ("But Farmers does not suggest how Dolemba could reasonably be expected to know those facts at this stage in the litigation. Indeed, it is likely that all of the documents and information that establish (or refute) the details of the agency relationship between Farmers and the Lombardi Agency are exclusively within the Defendants' custody and control."); *see Cunningham v. Rapid Response Monit. Servs.*, 251 F. Supp. 3d 1187, 1199 (M.D. Tenn. 2017) ("Cunningham has investigated the parties extensively, but inevitably some aspects of their relationships will only come to light in discovery.").

Ultimately, in this case, Plaintiff pleads robust facts giving rise to an inference that Optim is vicariously liable for the Vocodia's calls to Plaintiff calls based on all three vicarious liability theories.

## A.    Actual Authority

"An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Restatement (Third) of Agency § 2.01. Actual authority may be given expressly—such as when the principal states "in very specific or detailed language" how an agent is to act—or impliedly—such as when an agent acts "in a manner in which [the] agent believes the principal wishes the agent to act based on the agent's reasonable interpretation of the principal's manifestation in light of the principal's objectives and other facts known to the agent." *Hayhurst v. Keller Williams Realty, Inc.,* No. 1:19CV657, 2020 U.S. Dist. LEXIS 128877, at *16 (M.D.N.C. July 22, 2020) (denying motion to dismiss in TCPA vicarious liability case); *see Cunningham*, 251 F. Supp. 3d at 1199 ("The question of whether implied authority may have existed would require the Court to know more about the course of the parties' dealings and the generally expected course of business ….").

Actual agency "does not require the principal to specify the singular acts for which his or her authority exists as long as the acts are incidental to or reasonably

necessary to accomplish what is authorized." *Harrington v. Roundpoint Mortg. Servicing Corp.*, 2017 U.S. Dist. LEXIS 55023, at *21 (M.D. Fla. Apr. 10, 2017). "The concept of scope of authority is broad. An agent has authority to act to further the principal's objectives, as the agent reasonably understands the principal's manifestations and objectives. The principal is liable for the acts of the agent to further the principal's purposes unless the agent acts entirely for the agent's benefit only." *United States v. Dish Network LLC*, 256 F. Supp. 3d 810, 923 (C.D. Ill. 2017) (citing Restatement (Third) of Agency § 2.02(1)).

Thus, for a TCPA claim, a plaintiff sufficiently pleads that a defendant directed an agent's calls by alleging facts giving rise to an inference that the defendant was "involved" in the "sales practices and marketing procedures." *United States*, 256 F. Supp. at 922-923; *Dolemba*, 213 F. Supp. 3d at 997 ("Of course, these facts may not be sufficient to prove any theory of vicarious liability. They are more than sufficient, however, to entitle Dolemba to further discovery."). Here, Plaintiff alleges that Optim is liable for Vocodia's conduct because Optim:

- Expressly contracted with Vocodia to make telemarketing calls;

- Provided the specific criteria for the leads it would accept and required Vocodia to adhere to that criteria. Based on the calls to Mr. Connor, that minimally includes (a) only contacting individuals with hearing loss (b) permitting Vocodia to use pre-recorded messages.

- Actually participated in Vocodia' telemarketing calls to the extent it had its own employees standing by to pitch hearing aid services to consumers who received the telemarketing calls and were

> transferred by Vocodia to Optim's telephone number, which Optim
> directed Vocodia to do.

*See* Amended Complaint ¶ 53-56. In fact, there can be no greater evidence at the pleading stage of a defendant being "heavily involved in the sales practices and marketing procedures" than actually participating in the telemarketing calls. *Hayhurst*, 2020 U.S. Dist. LEXIS 128877, at *21.

Plaintiff plausibly states a claim for vicarious liability. *See Rinky Dink, Inc. v. Elec. Merch. Sys.*, 2014 U.S. Dist. LEXIS 199105, *18 (W.D. Wash. Nov. 4, 2014) (denying motion to dismiss vicarious liability claim where plaintiff alleged that defendant "enlisted CallFire to make . . . prerecorded calls regarding its credit card services" and "had the ability to control CallFire's actions by virtue of hiring CallFire and setting the terms of the automated calls."). Indeed, another court denied a motion to dismiss vicarious liability based TCPA claims for this exact reason—because the defendant actually participated in the telemarketing calls at issue, including by speaking directly with the plaintiff as a result of the calls:

> Plaintiff has made a prima facie showing of an agency relationship based on actual authority. Her Amended Complaint provides specific allegations regarding Mutual of Omaha's ability to control the third party's telemarketing methods…These allegations are similar to those made in other TCPA cases in this Court. *See Hossfeld v. Gov't Emples. Ins. Co.*, 88 F. Supp. 3d 504, 507 (D. Md. 2015) ("Plaintiffs allege that 'in order to accept telemarking call transfers, sellers must tell their telemarketers and lead generators the speed and volume of calls so that its operators do not become overwhelmed.'") (internal citations omitted).

Additionally, just as in *Hossfeld*, 88 F. Supp. 3d at 510-12, plaintiff has alleged that she received calls from an unidentified third-party telemarketer hired to sell branded products of another company who had control over the telemarketer's practices with respect to selling its products. ECF 8, ¶¶ 2, 16, 41…Plaintiff also alleges that during the "solicitation", Mutual of Omaha's insurance services "were promoted." *Id.* ¶ 25. Moreover, she was then transferred to Eric Chambers, who identified himself as an employee of Mutual of Omaha. *Id.* ¶ 26.

*Jones v. Mut. of Omaha Ins. Co.,* Civil Action No. ELH-22-905, 2022 U.S. Dist. LEXIS 203313, *21-23 (D. Md. Nov. 7, 2022).

The circumstances here are nothing like those in the cases Optim relies on. For example, in *Winters v. Grand Caribbean Cruises Inc.,* No. CV-20-00168-PHX-DWL, 2021 U.S. Dist. LEXIS 158176, at *14-15 (D. Ariz. Aug. 20, 2021), the plaintiff never identified any actual third party involved in the calling, "The 'Telemarketing Agent' is unidentified and the TAC offers only conclusory allegations concerning its relationship with Grand Caribbean". Here, the Plaintiff alleges the existence of a contract, who the parties are to it, and how Vocodia acted at Optim's instruction.

Similarly, in *Childress v. Liberty Mut. Ins. Co.,* 2018 WL 4684209, *10 (D.N.M. Sept. 28, 2018), the plaintiff, who was *pro se* at the time of filing, actually alleged "that the pre-recorded message actually came from Defendant's 'robot machine'" as opposed to sufficiently making any vicarious liability argument. Unlike here, where the Plaintiff alleges that Vocodia made the pre-recorded

telemarketing calls with the authority of Optim and then, per their instructions, transferred the pre-recorded call directly to Optim.

As in *Jones*, the Plaintiff's direct interactions with the Optim during the telemarketing call following the pre-recorded messages are sufficient to permit him to proceed to discovery regarding the relationship between the two parties.

## B.    Apparent Authority

The Plaintiff also sufficiently pleads Optim's liability based on an apparent authority theory.

Apparent authority "arises when a third-party reasonably believes that the [] agent had authority to act on behalf of the principal and that belief can be traced to the principal's own manifestations." *In re Fresh & Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141, 1167–68 (D. Idaho 2011). Apparent authority can exist even where a putative principal does not communicate directly with a consumer. *See Hayhurst*, 2020 U.S. Dist. LEXIS 128877, at *24-25 ("Although Keller Williams is not alleged to have made any statements directly to Hayhurst, it is not required to do so. Rather, its manifestations must be 'traceable' to it even if it did not make them directly to Hayhurst. And, its manifestations 'may take many forms'."). Here, of course, Optim made a sales pitch to the plaintiff *as part of the same pre-recorded call that forms the basis for this lawsuit. See e.g. Snyder v. Icard Gift Card, Ltd. Liab. Co.,* No. 0:15-CV-61718-WPD, 2017 U.S. Dist. LEXIS 222844, at *8-9 (S.D.

Fla. May 10, 2017) ("CashStar specifically directs iCard to market and promote CashStar's gift cards to consumers through advertising campaigns. [DE 65] at ¶ 21; *see also* [DE 85, at p. 3, ¶ 5]. Viewing the allegations of the Amended Complaint in a light most favorable to Plaintiff, Plaintiff has alleged sufficient facts to support vicarious liability under the TCPA for the unauthorized text [*9] messages at issue pursuant to at least two theories, apparent authority and ratification"). Similar to here where the Plaintiff has alleged that Optim hired Vocodia to send pre-recorded telemarketing calls and did so by contacting the Plaintiff with pre-recorded messages.

It was reasonable for Plaintiff to believe that Optim authorized Vocodia to make the telemarketing calls on its behalf because the calls were transferred to Optim and the Plaintiff received a pitch of Optim's hearing aid services by Optim's own employees. In fact, as a result of this manifestation traceable to Optim, Plaintiff had no reason to know that anyone other than Optim was involved in the calls until Optim identified Vocodia as the hired telemarketer that actually initiated them on Optim's behalf as part of this lawsuit. *See Hayhurst*, 2020 U.S. Dist. LEXIS 128877, at *24-25 ("Although Keller Williams is not alleged to have made any statements directly to Hayhurst, it is not required to do so. Rather, its manifestations must be 'traceable' to it even if it did not make them directly to Hayhurst. And, its manifestations 'may take many forms'.").

Optim refutes apparent authority by relying on the assertion that "there are no facts alleged that Optim said or did anything to the Plaintiff" (ECF No. 29 at *9). However, Mr. Connor has alleged that the November 28, 2023 call resulted in Optim offering its hearing aides to the Plaintiff. *See* Amended Complaint at ¶ 41. Optim then confirmed that they were based out of Savannah, GA and then the Plaintiff received an e-mail regarding the offer from [philip.kennedy@optimhearing.com](mailto:philip.kennedy@optimhearing.com). *Id.* at ¶ 42-43. Not only did Mr. Connor reasonably believe that it was Optim calling (and that's why his original complaint named only them), Optim actually participated on the pre-recorded call itself, giving Mr. Connor every indication that Optim acquiesced to the calling conduct.

### C. Ratification

Finally, Optim is also liable under theory of ratification.

"Ratification occurs when a principal knowingly chooses to accept the benefits of unauthorized actions an agent takes on the principal's behalf." *Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 833 (N.D. Ill. 2016); Restatement (Third) of Agency § 4.01(1) (2006) cmt. d. ("Ratification does not require a pre-existing formal agency relationship."). "[R]atification may create a relationship of agency when none existed between the actor and the ratifier at the time of the act. It is necessary that the actor have acted or purported to act on behalf of the ratifier." Restatement (Third) of Agency § 4.01 cmt. b; *see Henderson v. United Student Aid*

*Funds, Inc.*, 918 F.3d 1068, 1075 (9th Cir. 2019) (citing the Restatement and holding in a TCPA action that "ratification may create an agency relationship when none existed before the acts are 'done by an actor … who is not an agent but pretends to be.'"). To demonstrate prospective ratification, a plaintiff must show that a principal had full knowledge of all the facts, *or* was willfully ignorant of those facts, and manifested an intention to ratify the act in question, or that an agent acted for a principal's benefit and the principal "fail[ed] to object or repudiate an action." *Henderson*, 918 F.3d at 1074-75; *Aranda*, 179 F. Supp. 3d at 831.

Optim knowingly accepted the benefits of the telemarketing calls it knew it hired Vocodia to make and was directly involved in by getting exactly what was intended from the calls—the opportunity for Optim to have its own employees pitch its hearing aid to consumers on the telemarketing calls, like the Plaintiff. The fact that Plaintiff did not in fact agree to receive and pay for Optim's offered services does not change the fact that it benefitted in precisely the way it intended from its arrangement with Vocodia, *i.e.*, it obtained a potential lead. *See e.g. Aranda v. Caribbean Cruise Line, Inc.*, 179 F.Supp. 3d 817, 833 (N.D. Ill. 2016) (sellers ratified telemarketers conduct by accepting the benefits of the unlawful calls in TCPA case); *Keim v. ADF Midatlantic, LLC,* 2015 WL 11713593, at *8 (S.D. Fl. 2015) (allegations sufficient to state a claim where seller accepted the benefits of the conduct by having text messages sent on its behalf to phone numbers obtained on its

behalf); *Abante Rooter & Plumbing, Inc. v. Alarm.com, Inc.*, 2018 U.S. Dist. LEXIS 132078, (N.D. Cal. 2018) (a reasonable jury could find defendant liable on ratification theory where "Alarm.com knew of Alliance's allegedly illegal telemarketing conduct and accepted the benefits therefrom").

Regardless, there is no need for Optim to receive a benefit from a specific call to *Plaintiff*. The Restatement and case law makes clear that a party ratifies an entire course of conduct, like an entire calling campaign, and not just a specific act, like a single call. *See* Restatement ch. 4, intro. note (a principle who retains benefits of an agent's action "must also become subject to the legal consequences of *the totality of the agent's conduct*") (emphasis added); *id.* § 4.01 cmt. d ("if the [principal] is aware of *ongoing conduct encompassing numerous acts* by the [caller], failure to terminate may constitute ratification"); *id.* § 4.07 cmt. c ("interrelated components of economic activity among the same parties may . . . constitute a single transaction for purposes of this rule").

In *Henderson*, for example, the Ninth Circuit held "a reasonable jury could find that USA Funds ratified the debt collectors' *calling practices* by remaining silent and continuing to accept the benefits"—notwithstanding the fact that there was no evidence plaintiff made any loan payments as a result of the calls. *Henderson*, 918 F.3d at 1075 (it accepted "the benefits—*loan payments*—of the collectors' calls"); *Aranda*, 179 F. Supp. 3d at 833 (holding "[a] reasonable jury could conclude

. . . Berkley . . . knew that ESG was placing unlawful calls to gin up business for them and accepted the benefits from *this campaign*").

Likewise, in *Abante,* the court held it was "not persuaded by Alarm.com's assertion that because plaintiffs have not presented evidence any of the named plaintiffs or class members actually purchased an Alarm.com security system from Alliance or its agents, Alarm.com did not benefit from Alliance's conduct." 2018 U.S. Dist. LEXIS 132078 at *14, n. 4. The court found evidence Alarm.com received substantial revenue from the marketing campaign as a whole was sufficient for ratification. *Id.*

The Ninth Circuit explained the circumstances that support a ratification theory in a TCPA case involving calls placed in reversing a district court's grant of summary judgment in favor of another defendant in the case on vicarious liability:

> Royal Seas had knowledge of facts that would have led it to investigate Prospects's lead-generation activities to determine if it was calling only consenting individuals, but instead accepted leads generated by Prospects's calls with scant investigation. Royal Seas knew that Prospects placed calls using prerecorded voices, a prima facie violation of the TCPA. Royal Seas also knew that it received 2.1 million warm-transferred calls from Prospects between January 2017 and June 2018. Royal Seas knew that TCPA compliance required each call to be to an individual who had previously "agreed" to be called by Royal Seas ….

> Royal Seas also knew that of the 560 customers whom Prospects warm-transferred and who made purchases from Royal Seas, 13 percent had phone numbers that did not match the customer consent data that Prospects had provided to Royal Seas, and 31 percent did not have a matching phone number and last name. …

These facts, in combination with the evidence of widespread TCPA violations in the cruise industry, would support a finding that Royal Seas knew facts that should have led it to investigate Prospects's work for TCPA violations. *See Henderson*, 918 F.3d at 1076. We reverse the district court's summary judgment in favor of Royal Seas as to ratification.

*McCurley v. Royal Seas Cruises, Inc.*, No. 21-55099, 2022 U.S. App. LEXIS 9079, at *6-8 (9th Cir. Apr. 5, 2022).

Here, the Plaintiff has alleged that Vocodia did exactly what Optim hired it to do, make pre-recorded telemarketing calls to consumers and transfer them to Optim so Optim could sell its services. Such knowledge of Vocodia telemarketing conduct—without any corresponding action to stop it—is sufficient to have ratified their telemarketing in violation of the TCPA. *See e.g. Aranda, Inc.,* 179 F.Supp.3d at 833 (sellers ratified telemarketers conduct by accepting the benefits of the unlawful calls even after being put on notice that the calling campaign may violate the TCPA); *Keim v. ADF Midatlantic, LLC,* 2015 WL 11713593, at 8 (S.D. Fla. 2015), (allegations sufficient to state a claim where seller accepted the benefits of the conduct by having text messages sent on its behalf to phone numbers obtained on its behalf); *Klein v.Commerce Energy, Inc.,* 2017 WL 2672290, at *14 (W.D. Pa. 2017) (creditor ratified its debt collectors calls because it is presumed it would receive the benefit of any money collected and it knew that its collector was calling the wrong party).

As a result, Plaintiff sufficiently alleges Optim's vicarious liability based on

apparent authority and ratification theories based on manifestations traceable to and benefits derived directly by Optim both from the calls to Plaintiff and the calling campaign as a whole.

## **<u>CONCLUSION</u>**

Optim's motion to dismiss should be denied.

PLAINTIFF,
By his attorney

*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com