IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

JAY CONNOR, on behalf of himself
and others similarly situated,

    Plaintiff,

v.

OPTIM HEARING LLC, and
VOCODIA FL, LLC

    Defendants.

Case No. 4:23-cv-00358

_____/

**DEFENDANT OPTIM HEARING LLC'S REPLY
IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant Optim Hearing LLC ("Optim") respectfully submits this Reply in support of its Motion to Dismiss [ECF No. 36] (the "Motion").

**I.**     **INTRODUCTION**

Plaintiff's allegations—even taken together and read with all favorable inferences—do not come close to the sort of "control" required for an agency relationship to be established. Rather, they speak to a typical third-party contractor relationship in which a product seller—here Optim—specifies the types of leads it is willing to accept from a vendor. Optim is thus asserted to be a mere client of the third-party vendor that made the calls and not a principal for whom the vendor was an agent. Moreover, Plaintiff's Opposition fails to demonstrate any actions taken by Optim took to hold Vocodia out as its agent and has alleged no facts establishing Optim knew any number of the calls made by Vocodia were illegal—neither an apparent authority nor a ratification theory apply here.

Accordingly, Optim's Motion should be granted.

## II. ARGUMENT—PLAINTIFF FAILS TO ESTABLISH VICARIOUS LIABILITY AGAINST OPTIM

While Plaintiff concedes Optim cannot be directly liable for the calls at issue,[1] he argues that Optim should be vicariously liable for the at issue calls. Optim's Motion demonstrated that the allegations of the First Amended Complaint ("FAC") were insufficient to sustain a finding of vicarious liability under any of the three major theories: i) actual authority, ii) apparent authority, and iii) ratification. Plaintiff's flawed Opposition asserts that the FAC's allegations are sufficient as to all three theories. But he is mistaken, three times.

Although Plaintiff argues "[t]he existence of an agency relationship is normally one for the trier of fact to decide"[2] courts within this Circuit properly grant a motion to dismiss where the plaintiff fails to allege "a factual basis that gives rise to an inference of an agency relationship…" *Tuso v. Lennar Corp.*, No. 23-CV-22264, 2024 WL 1239474, at *3 (S.D. Fla. Mar. 22, 2024) (quoting *Hossfeld v. Am. Fin. Sec. Life Ins. Co.*, 544 F. Supp. 3d 1323, 1332 (S.D. Fla. 2021)) (internal quotations omitted). *See Tuso*, 2024 WL 1239474, at *3 (granting motion to dismiss in TCPA case for failure to state a claim for vicarious liability); *Cacho v. Sunbility LLC*, No. 6:23-CV-14-WWB-EJK, 2024 WL 982462, at *5 (M.D. Fla. Jan. 12, 2024) (recommend granting motion to dismiss as to Count I as the plaintiff failed to "plausibly alleged that…Sunbility is vicariously liable for Calls 1 through 7").

While Plaintiff simply wants a free pass to discovery to "determine if Optim is liable for the pre-recorded telemarketing calls that they hired Vocodia to send[,]"[3] "[d]iscovery is not intended as a fishing expedition permitting the speculative pleading of a case first and then

---

[1] *See Glass v. Lahood*, 786 F.Supp.2d 189, 210 (D.D.C.2011) (noting "when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded") (citations and internal quotation marks omitted).
[2] *Carlson v. FedEx Ground Package Sys.*, 787 F.3d 1313, 1318 (11th Cir. 2015).
[3] Opp. at 2.

2

pursuing discovery to support it; the Plaintiff must have some basis in fact for the action." *Smith v. Thibodeaux*, No. 23-CV-461-SDD-RLB, 2024 WL 1335649, at *6 (M.D. La. Mar. 28, 2024) (citing *Russell v. Choicepoint Servs., Inc.,* 302 F.Supp. 2d 654, 671 (E.D. La. 2004)). Here, there is not sufficient factual allegations to support a finding that Optim could be vicariously liable under a theory of actual authority, apparent authority, or ratification, and therefore, Optim's Motion should be granted.

### A. Plaintiff's Opposition Fails to Demonstrate Vocodia Had Actual Authority to Act.

As stated in the Motion, an agency relationship based on actual authority requires: "(1) the principal to acknowledge that the agent will act for it; (2) the agent to manifest an acceptance of the undertaking; and (3) control by the principal over the actions of the agent." *Gayle v. Bill Holt Auto., Inc.,* 2023 WL 6192733, at *7 (N.D. Ga. July 10, 2023) (citing *Whetstone Candy Co., Inc. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1077 (11th Cir. 2003)).

Plaintiff argues Optim is liable for Vocodia's conduct under an actual authority theory because: "Optim [(1)] [e]xpressly contracted with Vocodia to make telemarketing calls; [(2)] [p]rovided the specific criteria for the leads it would accept and required Vocodia to adhere to that criteria. Based on the calls to Mr. Connor, that minimally includes (a) only contacting individuals with hearing loss (b) permitting Vocodia to use pre-recorded messages; [and] [(3)] [a]ctually participated in Vocodia' telemarketing calls to the extent it had its own employees standing by to pitch hearing aid services to consumers who received the telemarketing calls and were transferred by Vocodia to Optim's telephone number, which Optim directed Vocodia to do." Opp. at 8-9. But as already detailed in the Motion, these allegations are insufficient.

First, Plaintiff asserts that Optim's contractual relationship with Vocodia demonstrates agency. *See* Opp. at 8. But the mere fact that a contract exists between two parties does not

3

establish agency. *See Trenz v. Sirius XM Radio, Inc.*, No. 15CV0044, 2015 WL 11658715, at *6 (S.D. CA. July 13, 2015) (contractual relationship alone is insufficient to plead vicarious liability under the TCPA); *Rogers v. Postmates Inc.*, No. 19-CV-05619-TSH, 2020 WL 3869191, at *4 (N.D. Cal. July 9, 2020) ("[a]n allegation of a beneficial contractual relationship alone is insufficient to establish agency") (internal quotations and citations omitted); *Chemtool Inc. v. Lubrication Techs., Inc.,* 148 F.3d 742, 745 (7th Cir. 1998) ("While an agency relationship can be created by contract or conduct, not all contracts create agency relationships and not all conduct creates agency relationships."); *Jackson v. Caribbean Cruise Line, Inc.,* 88 F. Supp. 3d 129, 138 (E.D.N.Y. 2015) (holding "the existence of a contract between CCL and Adsource—even one that imposes certain constraints on Adsource—does not necessarily mean that CCL had the power to give 'interim instructions' to Adsource, the hallmark of an agency relationship.") Plaintiff has pointed to nothing within the supposed contract that establishes any inference that agency may exist—despite possession of such contract. Without more specificity on how the act of entering into a contract with Vocodia evidences the necessary threshold of control, it does not establish Optim's actual authority over the actions of Vocodia.

Second, Plaintiff argues that Optim specified for Vocodia to only contact individuals with hearing loss and permit Vocodia to use pre-recorded messages. *See* Opp. at 8. But at best, this allegation merely suggests that Optim "controls only the outcome of the endeavor, and not the means used to achieve the outcome…" *United States v. Tianello*, 860 F. Supp. 1521, 1524 (M.D. Fla. 1994) ("If a party controls only the outcome of the endeavor, and not the means used to achieve the outcome, then an agency relationship does not exist."). Again, "[i]n determining whether vicarious liability may be imposed, the 'extent of control exercised by the [principal]' is the 'essential ingredient.'" *Barnes v. SunPower Corp*., No. 22-CV-04299-TLT, 2023 WL 2592371, at *3 (N.D. Cal. Mar. 16, 2023) (citing *Jones v. Royal Admin. Servs., Inc.,* 887 F.3d

4

443, 450 (9th Cir. 2018)). Merely specifying which leads it would accept, without more, is insufficient to demonstrate vicarious liability. *See, e.g., Canary v. Youngevity Int'l, Inc.,* No. 5:18-cv-03261-EJD, 2019 WL 1275343, at *6 (N.D. Cal. Mar. 20, 2019) ("Lacking, however, are sufficient factual allegations to plead that [defendant] exercised control over the specific contents of the March 15 call.... Even if [plaintiff] had alleged such facts, control over the content of an advertising call, without more, is insufficient to plead vicarious liability."); *see also Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012), aff'd, 582 F. App'x 678 (9th Cir. 2014) ("To succeed on this [TCPA] vicarious liability theory, [plaintiff] must demonstrate that these entities acted as an agent of [defendant]: that [defendant] controlled or had the right to control them and, more specifically, the manner and means of the text message campaign they conducted.")

Lastly, Plaintiff argues Optim actually participated in Vocodia's calls "to the extent it had its own employees standing by to pitch hearing aid services to consumers who received the calls…" Opp. at 8. But the mere fact that a call was transferred to Optim does not establish vicarious liability either. *See e.g., Doyle v. GoHealth, LLC,* No. CV 22-04291, 2023 WL 3984951, at *5 (D.N.J. Mar. 30, 2023) (finding no actual authority even where call was transferred, and the initial caller was identified); *Cunningham v. Daybreak Solar Power, LLC,* No. 4:22-CV-00599-O, 2023 WL 3985245, at *3 (N.D. Tex. June 13, 2023) (granting motion to dismiss finding the mere acceptance of a transfer not sufficient to establish agency); *Barnes v. SunPower Corp.*, No. 22-CV-04299-TLT, 2023 WL 2592371, at *3 (N.D. Cal. Mar. 16, 2023) (finding no vicarious liability and "the ability of the caller to transfer her directly to ... Sarah at [Defendant]" is a conclusory allegation").

Plaintiff's authority actually supports Optim's position. In *Rinky Dink, Inc. v. Elec. Merch. Sys., Inc.,* No. C13-01347-JCC, 2014 WL 12103245 (W.D. Wash. Nov. 4, 2014), the

court denied the defendant's motion to dismiss because "Gehrs had the ability to control CallFire's actions by virtue of hiring CallFire and setting the terms of the automated calls." *Rinky Dink, Inc.*, 2014 WL 12103245, at *7. Here, there are no similar allegations present in the FAC that Optim "set the terms" of the calls.

Further, Plaintiff relies on *Jones v. Mutual of Omaha Ins. Co.*, No. CV ELH-22-905, 2022 WL 16763733 (D. Md. Nov. 7, 2022). In *Jones*, however, the plaintiff alleged: "Mutual of Omaha had control over the manner and means of the third party's telemarketing methods by (1) having the ability to prohibit the use of prerecorded technology to generate customers but failing to do so (…), and (2) providing instructions regarding the volume of calls and the states in which those calls could be made. Moreover, Jones alleged that Mutual of Omaha 'explicitly informed the third party it could make calls into Maryland[.]'" *Id*. at *9. Here, allegations of volume and control over the use of prerecorded calls are not present in the FAC. Thus, while *Jones* recognizes that "the right to control" the campaign will suffice at the pleadings stage, no meaningful facts are alleged demonstrating that right of control in this case. Again, the only facts alleged show an arms-length transaction between Optim and Vocodia.

At bottom, Plaintiff's Opposition fails to demonstrate any actual authority Vocodia had to act on Optim's behalf. Other than the allegations that there was a contact between Optim and Vocodia and that Optim indicated which individuals to target, there are no allegations in the FAC that demonstrate Optim exercised sufficient control over Vocodia in order for there to be a principal-agent relationship. As such, Plaintiff should not proceed to discovery as he has failed to demonstrate sufficient factual allegations demonstrating actual authority.

**B.     Plaintiff's Opposition Fails to Demonstrate Apparent Authority.**

It is well established in the Eleventh Circuit that "apparent agency liability requires finding three essential elements: first, a representation by the principal to the plaintiff, which,

6

second, causes the plaintiff reasonably to believe that the alleged agent is authorized to act for the principal's benefit, and which, third, induces the plaintiff's detrimental, justifiable reliance upon the appearance of agency." *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1252 (11th Cir. 2014)).

Plaintiff argues apparent authority exists because "Optim made a sales pitch to the plaintiff as part of the same pre-recorded call that forms the basis for this lawsuit." Opp. at 11. Plaintiff relies on *Snyder v. iCard Gift Card, LLC*, No. 0:15-CV-61718-WPD, 2017 WL 10379592 (S.D. Fla. May 11, 2017), however, *Snyder* is clearly distinguishable. In *Snyder,* iCard entered into a contract with CashStar to sell CashStar's gift card products. *Snyder*, 2017 WL 10379592, at *3. Pursuant to the contract, iCard was supposed to sell gift card orders on CashStar's mobile app and online store, with the redemption of these gift cards handled through CashStar's API. *Id.* CashStar was responsible for fulfilling the orders by delivering physical or digital gift cards to purchasers. *Id.* The plaintiff alleged that iCard marketed and sold CashStar's gift card products through CashStar's API interface, and the contract also allowed iCard to use CashStar's logos and name under a "worldwide license," subject to CashStar's control. *Id.* Therefore, CashStar benefited directly from iCard's sales and marketing efforts, as well as from iCard's use of its system to fulfill customer orders. Additionally, CashStar instructed iCard to promote its gift cards to consumers through advertising campaigns. *Id.* Based on the totality of these allegations, the court ultimately denied the defendant's motion to dismiss finding it was reasonable to find CashStar vicariously liable for iCard's conduct.

This case is nothing like in *Snyder.* There are no allegations that Vocodia was permitted to use Optim's logos and name subject to Optim's control. There are also no allegations that Optim instructed Vocodia to promote Optim's hearing aids through advertising campaigns. Therefore, *Snyder* is not applicable here.

7

Moreover, although Plaintiff argues that "[i]t was reasonable for Plaintiff to believe that Optim authorized Vocodia to make the telemarketing calls on its behalf because the calls were transferred to Optim and the Plaintiff received a pitch of Optim's hearing aid services by Optim's own employees[,]"[4] the FAC contains no such allegations. Instead, the FAC alleges on November 28, 2023, a call came from 803-620-6881 and "Optim Hearing's hearing aids were then offered to the Plaintiff." FAC, at ¶¶ 39-41. Notably, however, the FAC does not allege a call was transferred to Optim nor does it allege that Optim's own employees pitched hearing aids to Plaintiff.

Lastly, Plaintiff does not allege that he relied on any representations to his detriment. *Franza*, 772 F.3d at 1252 (stating third element for apparent authority is "plaintiff's detrimental, justifiable reliance upon the appearance of agency"); *see Gayle*, 2023 WL 6192733, at *7 (finding no apparent authority where the plaintiff failed to allege that he took any actions (to his detriment or otherwise) in reliance on the purposed appearance that the Bill Holt Defendants were Defendant MMNA's agent).

Therefore, because Plaintiff has failed to allege facts showing Optim took any steps to hold Vocodia out as authorized to act on its behalf, Plaintiff's argument that Optim is liable under apparent authority must fail.

### C. Plaintiff's Opposition Fails to Demonstrate Optim Ratified Any Illegal Conduct of Vocodia's.

A principal may only ratify an agent's conduct by failing to act if it knowingly accepts the benefits of such conduct. *See* Restatement (Third) of Agency § 4.01 cmt. g ("A person may ratify an act ... by receiving or retaining benefits it generates if the person has knowledge of material facts and no independent claim to the benefit.").

---

[4] Opp. at 12.

Plaintiff argues that Optim ratified Vocodia's conduct because it "benefitted in precisely the way it intended from its arrangement with Vocodia, i.e., it obtained a potential lead." Opp. at 14. According to Plaintiff, "Optim knowingly accepted the benefits of the telemarketing calls it knew it hired Vocodia to make and was directly involved in by getting exactly what was intended from the calls." *Id.* But Plaintiff is wrong.

As an initial matter, "[n]o one can be held to have ratified the unauthorized act of an agent unless he has **knowledge of all the material facts**." *Temple Univ. Hosp., Inc. v. Russell Reimbursement Advisors, Inc.*, CV 16-2645, 2017 WL 1001186, at *11 (E.D. Pa. Mar. 15, 2017) (emphasis added). Here, Plaintiff's Opposition suggests that Optim knew of Vocodia's conduct because of its contractual relationship with Vocodia and the ultimate transfer of the calls to Optim. However, Plaintiff's FAC still falls short that Optim had specific knowledge of the conduct it was benefitting from. *See Landy v. Nat. Power Sources, LLC,* No. 3:21-CV-00425, 2021 WL 3634162, at *4 (D.N.J. Aug. 17, 2021) (finding no actual authority where plaintiff failed to allege facts demonstrating that defendant was aware of the third-party's conduct).

Moreover, Plaintiff cites to no authority that mere existence of a contractual relationship establishes ratification—and there is none. Quite the opposite, courts have found that a contractual relationship, without more, is insufficient to establish ratification. *See Trenz v. Sirius XM Radio, Inc.,* No. 15CV0044, 2015 WL 11658715, at *6 (S.D. CA. July 13, 2015) (contractual relationship alone is insufficient to plead vicarious liability under the TCPA); *Chemtool Inc. v. Lubrication Techs., Inc.,* 148 F.3d 742, 745 (7th Cir. 1998) ("While an agency relationship can be created by contract or conduct, not all contracts create agency relationships and not all conduct creates agency relationships.")

Further, accepting call transfers does not alone amount to a clear and unequivocal endorsement or adoption of the telemarketing calls made by a third party. Indeed, the mere fact

9

that Optim accepted a call transfer from a third party does not establish that it ratified the conduct of Vocodia. *See Landy*, 2021 WL 3634162, at *5 (finding no ratification in TCPA case finding a mere warm transfer was not enough to hold the non-calling defendant liable where the defendant did not "affirm[], assent, or consent…" to the call.); *Childress v. Liberty Mut. Ins. Co.*, No. 17-CV-1051 MV/KBM, 2018 WL 4684209, at *4 (D.N.M. Sept. 28, 2018) (finding no ratification in TCPA case even when the call was transferred to the defendant).

This case is distinguishable from in *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068 (9th Cir. 2019). In *Henderson*, the Ninth Circuit found ratification when third-party callers purported to be the agent of the defendant and "negotiated, deferred, and took payments on [the defendant's] behalf." *Henderson*, 918 F.3d at 1074. The Court held that there was evidence that the defendant communicated consent to the debt collectors through acquiescence in their calling practices that allegedly violated the TCPA. *Id*. at 1075. Unlike *Henderson*, Plaintiff does not sufficiently allege Vocodia purported to be Optim's agent, or that Optim ratified Vocodia's actions. When Plaintiff received the alleged calls, Plaintiff claims he heard a pre-recorded message and "Optim Hearing was identified." FAC, at ¶¶ 32-37. This is not sufficient to allege Vocodia *represented* itself to be Optim's agent.

*McCurley v. Royal Seas Cruises, Inc.*, No. 21-55099, 2022 WL 1012471 (9th Cir. Apr. 5, 2022) actually supports Optim's position. As Plaintiff highlighted in his Opposition, Royal Seas *knew:* "that Prospects placed calls using prerecorded voices" and "that of the 560 customers whom Prospects warm-transferred and who made purchases from Royal Seas, 13 percent had phone numbers that did not match the customer consent data that Prospects had provided to Royal Seas, and 31 percent did not have a matching phone number and last name." *McCurley*, 2022 WL 1012471, at *3. Based upon these facts, the Ninth Circuit concluded that Royal Seas "knew facts that should have led it to investigate Prospects's work for TCPA violations." *Id.* No facts in the

FAC even come close to that in *McCurley*. Although Plaintiff argues that based upon Optim and Vocodia's contractual relationship, Optim should have known it was engaging in alleged illegal activity, as highlighted above, an allegation of a contractual relationship is not enough.

The other legal authority Plaintiff offers in support of his claim of vicarious liability under a theory of ratification is easily distinguishable from the circumstances in this case. There, the plaintiffs' alleged sufficient facts and circumstances specific to the third-party marketer's conduct at issue and how, based on those specific facts or circumstances, the defendant knew or should have known of such illicit conduct. *See Aranda v. Caribbean Cruise Line, Inc.,* 179 F.Supp. 3d 817, 832 (N.D. Ill. 2016) (where the party making the illicit calls at issue was required by contract to provide an exact telephone script along with an exact audio file of each survey); *Abante Rooter & Plumbing, Inc. v. Alarm.com, Inc.,* 2018 U.S. Dist. LEXIS 132078, *13-14 (N.D. Cal. 2018) (where the third-party marketer's predecessor admitted on a Today Show segment that it had violated "state telemarketing laws and been sued in a class action lawsuit for similar violations" which the defendant knew of); *Klein v. Commerce Energy, Inc.,* 256 F. Supp. 3d 563, 588 (W.D. Pa. 2017) (where the agreement between the third-party marketer and the defendant "provides for submission to and review by the (defendant) of the calls made on its behalf", such that a reasonable inference can be made that Defendant would be on notice of any illegality of the third-party marketers conduct at issue). These facts are not present here.

As Plaintiff has failed to demonstrate that Optim had the requisite knowledge or intent to ratify Vocodia's conduct, Plaintiff's argument that Optim is liable under a ratification theory must fail.

### III. **CONCLUSION**

Based on the foregoing reasons and those stated in the Motion, this Court should grant Optim's Motion to Dismiss.

11

| | |
|---|---|
| Dated: May 2, 2024 | */s/ Brittany A. Andres*<br>Eric J. Troutman (pro hac vice)<br>California Bar No. 229263<br>Brittany Andres (pro hac vice)<br>California Bar No. 340856<br>TROUTMAN AMIN, LLP<br>400 Spectrum Center<br>Suite 1550<br>Irvine, CA 92618<br>Telephone: (949) 350-3663<br>troutman@troutmanamin.com<br>brittany@troutmanamin.com<br><br>*Attorneys for Defendants Optim Hearing LLC and Vocodia FL, LLC* |

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 2, 2024, I electronically sent the foregoing to counsel of record for the Plaintiff.

/s/ *Brittany A. Andres*
Brittany A. Andres