IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| JAY CONNOR, on behalf of himself and others similarly situated, | Case No. 4:23-cv-00358 |
| Plaintiff, | |
| v. | |
| OPTIM HEARING LLC, and VOCODIA FL, LLC | |
| Defendants. | |
| _____/ | |

**DEFENDANT VOCODIA FL, LLCS NOTICE OF SUPPLEMENTAL AUTHORITY
IN SUPPORT OF ITS MOTION TO STRIKE CLASS ALLEGATIONS**

On April 11, 2024, Defendant Vocodia FL, LLC ("Vocodia") filed its Motion to Strike Class Allegations [ECF No. 28].

On July 9, 2024, the United States District Court for the Southern District of California issued the attached opinion in *Brown v. Nano Hearing Tech OPCO, LLC d/b/a Nano Hearing Aids, Def.*, No. 3:24-CV-00221-BTM-JLB, 2024 WL 3367536 (S.D. Cal. July 9, 2024), a case under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. There, the court granted the defendant's motion to strike class allegations finding the class definition overly broad. More specifically, the court stated:

> "the class definition is overly broad because it fails to exclude any members who may have consented to receiving phone calls from Nano. The TCPA expressly precludes claims made by individuals who consented to be called. 47 U.S.C. § 227(b)(1)(A) (excluding from liability any call "made with the prior express consent of the called party.") Brown's class definition necessarily includes any individuals who have consented to calls from Nano. [] Like in *Sanders*, these individuals would also lack standing. 672 F. Supp. 2d at 991; *see Hernandez*, No. 16CV200-LAB (JLB), 2017 WL 932198, at *6 (striking class allegations in part "[b]ecause the class definition includes insureds who were not injured at all.")."

1

*Brown*, 2024 WL 3367536 at *8.

Vocodia respectfully submits that *Brown* supports granting Vocodia's Motion to Strike Class Allegations. Attached hereto as **Exhibit A** is a true and correct copy of the opinion.

Dated:  July 17, 2024        */s/ Brittany A. Andres*
　　　　　　　　　　　　　　Eric J. Troutman (pro hac vice)
　　　　　　　　　　　　　　California Bar No. 229263
　　　　　　　　　　　　　　Brittany Andres (pro hac vice)
　　　　　　　　　　　　　　California Bar No. 340856
　　　　　　　　　　　　　　TROUTMAN AMIN, LLP
　　　　　　　　　　　　　　400 Spectrum Center
　　　　　　　　　　　　　　Suite 1550
　　　　　　　　　　　　　　Irvine, CA 92618
　　　　　　　　　　　　　　Telephone: (949) 350-3663
　　　　　　　　　　　　　　troutman@troutmanamin.com
　　　　　　　　　　　　　　brittany@troutmanamin.com

　　　　　　　　　　　　　　*Attorneys for Defendants Optim Hearing LLC and Vocodia FL, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 17, 2024, I electronically sent the foregoing to counsel of record for the Plaintiff.

/s/ *Brittany A. Andres*
Brittany A. Andres

# EXHIBIT A

Case 4:23-cv-00358-RSB-CLR   Document 43   Filed 07/17/24   Page 5 of 12
STEPHANIE BROWN, individually and on behalf of others..., Slip Copy (2024)
2024 WL 3367536

2024 WL 3367536
Only the Westlaw citation is currently available.
United States District Court, S.D. California.

STEPHANIE BROWN, individually and on behalf of others similarly situated, Plaintiff,
v.
NANO HEARING TECH OPCO, LLC d/b/a NANO HEARING AIDS, Defendant.

Case No.: 3:24-cv-00221-BTM-JLB
|
Filed 07/09/2024

## ORDER GRANTING DEFENDANT NANO HEARING AIDS' MOTION TO DISMISS

Hon. Barry Ted. Moskowitz United States District Judge

**\*1** Defendant Nano Hearing Tech Opco, LLC doing business as Nano Hearing Aids ("Nano") has filed a Motion to Dismiss Plaintiff's Complaint. (ECF No. 6 ("Def.'s MTD").) In response, Plaintiff Stephanie Brown ("Brown") filed an opposition. (ECF No. 7 ("Pls.' Opp'n")). Nano then filed a reply. (ECF No. 10 ("Def.'s Reply").) For the reasons discussed below, the Court **grants** Nano's Motion to Dismiss and Motion to Strike.

### I. BACKGROUND

Brown, on behalf of herself and a potential class, filed suit against Nano alleging unsolicited marketing that constitutes negligent and willful violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c)(5). (ECF No. 1 ("Complaint").) Brown alleges she "has been on the National Do Not Call Registry since approximately June 12, 2009," and that she has never consented to contact from Nano. (Id. at ¶¶ 28, 35.) Brown alleges that despite the above, she received two phone calls on or around January 19, 2023 from the phone numbers 727-431-6059 and 727-413-6449, both of which she alleges "[u]pon information and belief ... belong[ ] to Defendant and/or Defendant's agent." (Id. at ¶¶ 30–31.) She alleges the callers both promoted Nano Hearing Aids to her. (Id.) Next, Brown alleges she received another phone call on or around February 15, 2023 from the phone number 727-373-1759, during which she "spoke to Daniel Houston who said he was with Life Care." (Id. at ¶ 32.) Mr. Houston then transferred the call to someone named Ken, who gave Brown a callback number of 619-348-6968 x 21. (Id.) Brown alleges this call was also made by Defendant's agent who also spoke to her about Nano Hearing Aids, and that "[w]hen called back, this number goes to Nano Hearing." (Id.)

Brown's Complaint asks for declaratory and injunctive relief and damages under section 277 of the TCPA. (Id. at 14.) Brown seeks to represent a putative class of similarly situated individuals, called a "Federal TCPA DNC Class," which she defines in her Complaint as:

> All persons within the United States who received two phone calls within a 12-month period from Defendant to said person's telephone, and such person had previously included their name on the National Do Not Call Registry at least 31 days prior to receiving Defendant [sic] first call, within the four years prior to the filing of this Complaint.

(Id. at ¶ 41.)

### II. STANDARD

Nano moves to dismiss Brown's Complaint under Federal Rule of Civil Procedure ("FRCP") 12(b)(6) for failure to state a claim and 12(b)(1) for lack of subject matter jurisdiction. (ECF No. 6.) In the alternative or in addition, Nano moves to strike the class allegations under FRCP 12(f) and 23. (Id.) For the reasons discussed below, the Court grants Nano's Motion to Dismiss and Motion to Strike.

**A. Motion to Dismiss for failure to state a claim under 12(b)(6)**
A motion to dismiss under FRCP 12(b)(6) should be granted only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). When reviewing a motion to dismiss, the allegations of material fact in plaintiff's complaint are taken as

Case 4:23-cv-00358-RSB-CLR Document 43 Filed 07/17/24 Page 6 of 12
STEPHANIE BROWN, individually and on behalf of others..., Slip Copy (2024)
2024 WL 3367536

true and construed in the light most favorable to the plaintiff. *See* [Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995)](#). Although detailed factual allegations are not required, factual allegations "must be enough to raise a right to relief above the speculative level." [Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007)](#). Only a complaint that states a plausible claim for relief will survive a motion to dismiss. *Id.*

### B. Motion to Dismiss for lack of subject matter jurisdiction under 12(b)(1)

**\*2** Nano challenges the Complaint, in part, on the ground that Brown lacks Article III standing. (ECF No. 6.) Standing is an element of subject matter jurisdiction. Therefore, Nano moves to dismiss Brown's Complaint for lack of subject matter jurisdiction pursuant to [FRCP 12(b)(1)](#).

A [Rule 12(b)(1)](#) jurisdictional attack may be facial or factual. [Fed. R. Civ. P. 12(b)(1)](#). In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. [Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004)](#). Generally, on a 12(b)(1) motion regarding subject matter jurisdiction, unlike a 12(b)(6) motion, a court need not defer to a plaintiff's factual allegations. *Id.* But the Supreme Court has held that where a 12(b)(1) motion to dismiss is based on lack of standing, the court must defer to the plaintiff's factual allegations and must "presume[e] that general allegations embrace those specific facts that are necessary to support the claim." [Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (1990)](#). Therefore, to show standing "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." [Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)](#). The party invoking federal subject matter jurisdiction has the burden of establishing standing. [Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016)](#), *as revised* (May 24, 2016).

### C. Motion to Strike class allegations under 12(f) and 23

[Rule 12(f)](#) authorizes courts to strike "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." [Fed. R. Civ. P. 12(f)](#). "Before a motion to strike is granted, the court must be convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed." [Sanders v. Apple Inc., 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009)](#) (citing [RDF Media Ltd. v. Fox Broadcasting Co., 372 F. Supp. 2d 556, 566 (C.D. Cal. 2005)](#)). "When considering a motion to strike, a court must view the pleadings in a light most favorable to the non-moving party." [Brown v. Hain Celestial Grp., Inc., 913 F. Supp. 2d 881, 888 (N.D. Cal. 2012)](#) (citation omitted).

Plaintiffs bear the burden of pleading, and ultimately demonstrating, compliance with [Rule 23](#)'s requirements. [Zinser v. Accufix Rsch. Inst., Inc., 253 F.3d 1180, 1186 (9th Cir.)](#), *opinion amended on denial of reh'g*, [273 F.3d 1266 (9th Cir. 2001)](#). Though "[i]n general, the appropriateness of proceeding as a class action is not tested at the pleading stage," [Hernandez v. State Farm Fire & Cas. Co., No. 16CV200-LAB (JLB), 2017 WL 932198, at \*2 (S.D. Cal. Mar. 9, 2017)](#), "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." [General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 160 (1982)](#). "In the Ninth Circuit, motions to strike are proper, even if the material is not prejudicial to the moving party, if granting the motion would make trial less complicated or otherwise streamline the ultimate resolution of the action." [Brown, 913 F. Supp. 2d at 888](#) (citing [Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993)](#), *rev'd on other grounds*, [510 U.S. 517 (1994)](#)).

### III. DISCUSSION

#### A. <u>Motion to Dismiss for failure to state a claim under 12(b)(6)</u>

**\*3** Brown seeks relief under the TCPA for three phone calls allegedly placed to her cellular telephone. There are two potential theories of liability under the TCPA: (1) direct liability and (2) vicarious liability. [Thomas v. Taco Bell Corp., 582 F. App'x 678, 679 (9th Cir. 2014)](#). In other words, "[f]or a person to 'make' a call under the TCPA, the person must either (1) directly make the call, or (2) have an agency relationship with the person who made the call." [Pascal v. Agentra, LLC, No. 19-CV-02418-DMR, 2019 WL 5212961, at \*2 (N.D. Cal. Oct. 16, 2019)](#) (citation omitted)).

Case 4:23-cv-00358-RSB-CLR Document 43 Filed 07/17/24 Page 7 of 12
STEPHANIE BROWN, individually and on behalf of others..., Slip Copy (2024)
2024 WL 3367536

## I. Direct TCPA Liability

First, Nano argues Brown's Complaint does not plausibly allege that Nano, rather than some third party, physically placed the alleged calls. (ECF No. 6, 8–10.) In response, Brown argues the Complaint plausibly alleges direct liability because it alleges all three calls promoted Nano's products and that "an individual associated with the final call gave a callback number (with an extension) that is directly associated with Nano Hearing." (ECF No. 7, 10–11.)

Direct liability under the TCPA applies only to persons or entities that directly "make" or "initiate" calls, which requires "tak[ing] the steps necessary to physically place" the call. *Sheski v. Shopify (USA) Inc.*, No. 19-CV-06858-HSG, 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020) (analyzing claim under section 227(b) of TCPA) (citing *In re Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6583 ¶ 26 (2013)); *see Naiman v. Freedom Forever, LLC*, No. 19-CV-00256-JSC, 2019 WL 1790471, at *4 (N.D. Cal. Apr. 24, 2019) (applying substantially similar rule to claims asserted under TCPA section 227(c)).

Here, Brown merely alleges "on information and belief" that these phone numbers belonged to Nano or Nano's agent. (ECF No. 1, ¶¶ 30–32.) The Complaint does not explain the reasons behind this belief. In her Opposition, Brown explains that she believed these numbers belonged to Nano or its agent because the callers promoted Nano Hearing Aids to her and because one of the calls was transferred to a phone number that connects to Nano. (ECF No. 7, 11.) Brown does not allege that any of the callers identified themselves as representatives of Nano. These allegations are insufficient to establish that Nano directly made the calls. *See Canary v. Youngevity Int'l, Inc.*, No. 5:18-CV-03261-EJD, 2019 WL 1275343, at *3 (N.D. Cal. Mar. 20, 2019) (holding "the Complaint lacks sufficient facts to support a plausible inference that [the defendant] dialed [the plaintiff's] telephone number" where plaintiff only alleged the calls were made by defendant's agent based on "understanding and belief" and a callback number which reached an individual who may have been employed by defendant); *Naiman*, No. 19-CV-00256-JSC, 2019 WL 1790471, at *4 (finding allegations that "Defendant made the calls in question" without "further details (i.e., how the caller identified itself or what entity it was calling on behalf of)" did not show direct liability for DNC claim).

Further, the only caller whose identity Brown describes in the Complaint identified himself as an employee of Life Care, not Nano. (ECF No. 1, ¶ 32.) Brown does not allege that "Life Care" is Nano or affiliated with Nano. In addition, the only phone number which Brown alleges she called is the alleged callback number, 619-348-6968 ("619 Number"). (Id.) Even if the Court takes Brown's allegation that the 619 Number belongs to Nano as true, the Complaint indicates that no call was placed *from* the 619 Number. The allegation that, after being transferred from a representative of Life Care, someone identified only as "Ken" gave Brown a callback number that reaches Nano is insufficient to show that Nano made any of the calls to Brown. (See id.)

## II. Vicarious TCPA Liability

**\*4** "[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014), *aff'd but criticized on other grounds*, 577 U.S. 153 (2016), *as revised* (Feb. 9, 2016). "To determine whether a plaintiff has established an agency relationship, the Ninth Circuit 'relies on the Restatement (Third) of Agency.' " *Ewing v. Freedom Forever, LLC*, No. 23-CV-1240 JLS (AHG), 2024 WL 221777, at *7 (S.D. Cal. Jan. 19, 2024) (quoting *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018)). Common law agency under the Restatement requires a consensual relationship between an alleged principal and agent. Restatement (Third) of Agency, § 1.01, cmt. C. This is "more than mere passive permission; it involves request, instruction, or command." *Klee v. United States*, 53 F.2d 58, 61 (9th Cir. 1931). "For an agency relationship to exist, an agent must have authority to act on behalf of the principal and '[t]he person represented [must have] a right to control the actions of the agent.' " *Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017) (quoting Restatement (Third) Of Agency § 1.01, cmt. C). "Though 'the precise details of the agency relationship need not be pleaded to survive a motion to dismiss, sufficient facts must be offered to support a reasonable inference that an agency relationship existed.' " *Ewing*, No. 23-CV-1240 JLS (AHG), 2024 WL 221777, at *7 (quoting *Kristensen*, 12 F. Supp. 3d at 1301).

"Three theories of agency could support vicarious liability: (1) actual authority; (2) apparent authority; and (3) ratification." *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, No. 17-CV-03315-PJH, 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018) (citing *Thomas*, 582 Fed. App'x at 679).

### i. Actual Authority

Nano argues Brown failed to allege sufficient facts to establish that Nano had an agency relationship with any third parties who allegedly placed the calls. (ECF No. 6, 12–13.) In response, Brown argues the Complaint plausibly alleges actual authority because it alleges all three calls promoted Nano's products and Nano's phone number was provided as a callback number in the last call. (ECF No. 7, 12–14.)

To allege actual authority, a plaintiff must allege facts showing that (1) the principal "controlled or had the right to control" the agent; (2) the principal " 'manifest[ed] assent' to their right to control" the agent; and (3) the principal "either communicated a direction to" the agent to make the calls or the calls were "consistent with" the principal's "general statement of what [the agent] [was] supposed to do." *Pascal*, No. 19-CV-02418-DMR, 2019 WL 5212961, at *3 (quoting *Mavrix*, 873 F.3d at 1054).

Here, Brown's conclusory allegations are also insufficient to show actual authority. Brown does not allege that any of the callers identified themselves as Nano's agents or had any interactions with Nano. Brown's allegations that "[u]pon information and belief, [each] number belongs to Defendant and/or Defendant's agent" are conclusory and insufficient to plead vicarious liability. (ECF No. 1, ¶¶30–32); *see Naiman*, No. 19-CV-00256-JSC, 2019 WL 1790471, at *4 (finding "boilerplate allegation asserting the existence of an agency relationship" that "each and every Defendant was acting as an agent and/or employee of each of the other Defendants" "is wholly conclusory" and insufficient to plead vicarious liability).

Further, even if Brown had sufficiently alleged Life Care made the third call on Nano's behalf, she still fails to allege facts showing the three prongs necessary for actual authority. There are no allegations supporting the existence of an agency relationship between the two companies, any "request, instruction, or command," *Klee*, 53 F.2d at 61, or that Nano demonstrated "a right to control the actions of

[an] agent." Restatement (Third) Of Agency § 1.01, cmt. C. Since Brown has failed to allege "sufficient facts ... to support a reasonable inference that an agency relationship existed," *Ewing*, No. 23-CV-1240 JLS (AHG), 2024 WL 221777, at *7, she cannot hold Nano liable under vicarious liability through actual authority. *See Panacci v. A1 Solar Power, Inc.*, No. 15-CV-00532-JCS, 2015 WL 3750112, at *7 (N.D. Cal. June 15, 2015) (finding no vicarious liability where plaintiff did not allege that defendant "controlled, authorized, or even knew about [third party's] phone calls or that [defendant] had any control over" the caller, and where plaintiff pleaded "virtually no [factual] allegations regarding the relationship" between defendant and the caller). Finally, Brown also fails to allege any facts that connect Life Care or Nano to the first two calls she received, as the calls came from different phone numbers, and Brown does not allege any identifying information of either caller.

**\*5** Brown made nearly identical arguments in *Barnes v. SunPower Corp.*, No. 22-CV-04299-TLT, 2023 WL 2592371 (N.D. Cal. Mar. 16, 2023), and the Northern District of California rejected them for the same reasons. The *Barnes* court explained, "[a]ccording to Plaintiff Brown, the ability of the caller to transfer her directly to ... [']Sarah at [Defendant] indicates that the caller either worked at [Defendant] or was previously authorized to the place the call by [Defendant], as did the confirmatory text and email,' but this allegation is conclusory and insufficient to establish that Defendant directly made the call or that Defendant has an agency relationship with 'solar project' who made the initial call." No. 22-CV-04299-TLT, 2023 WL 2592371, at *3 (citation omitted). Similarly here, even if the 619 Number belongs to Nano, this allegation is insufficient to establish that Nano made or authorized any of the calls through an agent.

This case is unlike *Ewing*, where this Court found the plaintiff alleged actual authority by pleading "each of the [ ] callers indicated that they were acting on behalf of Freedom Forever, either by introducing themselves as a 'master dealer' for Freedom Forever, indicating that they refer leads to Freedom Forever, or emailing links to websites associated with Freedom Forever." No. 23-CV-1240 JLS (AHG), 2024 WL 221777, at *7. The *Ewing* Court also relied on the facts of *Bilek v. Fed. Ins. Co.*, 8 F.4th 581 (7th Cir. 2021), where the Seventh Circuit "determined that the plaintiff had met his burden by pleading that: (1) the defendant authorized the callers to make calls using its approved scripts, tradename, and proprietary information; (2) the callers quoted him the

Case 4:23-cv-00358-RSB-CLR   Document 43   Filed 07/17/24   Page 9 of 12
STEPHANIE BROWN, individually and on behalf of others..., Slip Copy (2024)
2024 WL 3367536

defendant's health insurance[;] and (3) the defendant provided said callers those quotes and permitted said callers to enter information into its system." *Id.* (citing 8 F.4th at 587–88). Unlike the plaintiffs in *Ewing* and *Bilek*, Brown failed to plead concrete facts meeting the elements of actual authority. *See id.*; 8 F.4th at 589.

### ii. Apparent Authority

Brown argues she also sufficiently alleged apparent authority because it is "obvious that some agreement existed between Defendant and its agents regarding the placing of calls, the promotion of Defendant's products, and the transfer of that call to Defendant." (ECF No. 7, 15.) In response, Nano argues Brown failed to plead apparent authority because the allegations do not sufficiently connect Nano to the callers, and the caselaw she relies on was overruled. (ECF No. 10, 3–5.)

An agency relationship may also be created through apparent authority. *Mavrix Photographs, LLC*, 873 F.3d at 1054 (citation omitted). "Apparent authority results when the principal does something or permits the agent to do something which reasonably leads another to believe that the agent had the authority he purported to have." *Hawaiian Paradise Park Corp. v. Friendly Broad. Co.*, 414 F.2d 750, 756 (9th Cir. 1969). "The principal's manifestations giving rise to apparent authority may consist of direct statements to the third person, directions to the agent to tell something to the third person, or the granting of permission to the agent to perform acts and conduct negotiations under circumstances which create in him a reputation of authority." *Id.* (citation omitted). Apparent authority "can only 'be established by proof of something said or done by the [alleged principal], on which [the plaintiff] reasonably relied.' " *Thomas*, 582 F. App'x at 679 (quoting *NLRB v. Dist. Council of Iron Workers of Cal. & Vicinity*, 124 F.3d 1094, 1099 (9th Cir. 1997)).

Here, Brown's apparent authority theory fails because Brown fails to allege any facts of interaction between Nano and Brown or Nano and the callers that could support a belief that the callers had authority to make calls on Nano's behalf. *See Thomas*, 582 F. App'x at 679. Allegations of the alleged agents' statements alone are insufficient. *See Hawaiian Paradise Park Corp.*, 414 F.2d at 756; *Hanson v. Am. W. Airlines, Inc.*, 544 F. Supp. 2d 1038, 1043 (C.D. Cal. 2008) ("Only the acts of the principal, not of the agent,

give rise to apparent authority.") (citing *C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 479 (9th Cir. 2000)).

**\*6** Brown's arguments in her Opposition also fail. Brown relies on a single case to support an apparent authority theory based entirely on the actions of the callers, but the case was overruled on the exact ground for which Brown relies on it. (ECF No. 7, 16); *see Mey v. Monitronics Int'l, Inc.*, 959 F. Supp. 2d 927 (N.D.W. Va. 2013), *subsequently rev'd sub nom. In re: Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, 223 F. Supp. 3d 514, 527 (N.D.W. Va. 2016), *aff'd sub nom. Hodgin v. UTC Fire & Sec. Americas Corp.*, 885 F.3d 243 (4th Cir. 2018) ("This Court is well aware that in so ruling, I am rejecting the prior decision of this Court in this case[:] *Mey v. Monitronics International, Inc.*, 959 F.Supwp.2d 927 (N.D.W.Va. 2013)."). Brown argues, "[s]imilarly to *Mey*, Plaintiff here has clearly pled that the representatives on the calls were holding themselves out as representatives of Defendant." (ECF No. 7, 16.) In overruling *Mey*, the *Monitronics* court held that "the fact that entities were permitted to hold themselves out as authorized dealers or some similar description is insufficient" to hold a defendant vicariously liable. *In re: Monitronics International, Inc., Telephone Consumer Protection Act Litigation*, 223 F. Supp. 3d at 527–28; *see also Makaron v. GE Sec. Mfg., Inc.*, No. CV-14-1274-GW AGRX, 2015 WL 3526253, at \*10 (C.D. Cal. May 18, 2015) (disagreeing generally with the conclusion reached in *Mey*, 959 F. Supp. 2d, that an agreement allowing an entity to hold itself out as an authorized dealer of another's products was sufficient to establish apparent authority). The court explained this is because "the mere fact that a dealer uses a supplier['s] name does not render it an agent of the supplier, just as every bar which advertises that they sell a particular brand of beer is not the agent of the brewery whose name they advertise." *In re: Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, 223 F. Supp. 3d at 527–28.

### iii. Ratification

In response to Nano's arguments that Brown failed to plead vicarious liability, Brown argues the Complaint also alleges vicarious liability through a theory of ratification because Nano "ratified its agent's actions through accepting the benefits of their telemarketing services." (ECF No. 7,

16–17.) Nano responds that the Complaint never mentions ratification, and that a vicarious liability theory based on ratification fails regardless because it still requires proof of an agency relationship. (ECF No. 10, 6–7.)

"Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Restatement (Third) Of Agency § 4.01. "A person ratifies an act by (a) manifesting assent that the act shall affect the person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents." *Id.* "The set of effects that ratification creates are the consequences of actual authority." *Id.*, cmt. B. "Although a principal is liable when it ratifies an originally unauthorized tort, the principal-agent relationship is still a requisite, and ratification can have no meaning without it." *Batzel v. Smith*, 333 F.3d 1018, 1036 (9th Cir. 2003), *superseded in part by statute on other grounds as stated in Breazeale v. Victim Servs., Inc.*, 878 F.3d 759, 766–67 (9th Cir. 2017).

Here, Brown's ratification theory fails for the same reasons her other vicarious liability theories fail: she has not sufficiently pleaded an agency relationship. The Complaint lacks facts alleging that Nano acted as a principle or that it ratified any of the alleged conduct. Brown "cannot show [Nano] is liable under a ratification theory because 'the principal-agent relationship is still a requisite.' " *Abante Rooter & Plumbing*, No. 17-CV-03315-PJH, 2018 WL 288055, at *6 (quoting *Batzel*, 333 F.3d at 1036).

Accordingly, the Court **GRANTS** Nano's FRCP 12(b)(6) Motion to Dismiss with leave to amend.

### B. Motion to Dismiss for lack of subject matter jurisdiction under 12(b)(1)

#### I. Article III Standing

Next, Nano argues that Brown's Complaint should be dismissed for lack of subject matter jurisdiction under FRCP 12(b)(1) because it fails to meet the causation and redressability elements of Article III standing.

Standing is a necessary element of federal court jurisdiction under Article III of the U.S. Constitution. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Accordingly, standing is a "threshold question in every federal case." *Thomas v. Mundell*, 572 F.3d 756, 760 (9th Cir. 2009) (citing *Warth*, 422 U.S. at 498.). To establish standing, (i) a plaintiff must have suffered a "concrete and particularized" "injury in fact"; (ii) "there must be a causal connection between the injury and the conduct complained of" ("causation"); and (iii) the injury must be capable of being "redressed by a favorable decision" ("redressability"). *Lujan*, 504 U.S. at 560–61. "In a class action, standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Serv.*, 511 F.3d 974, 985 (9th Cir. 2007).

**\*7** For causation, "the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.' " *Lujan*, 504 U.S. at 560–61 (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41–42 (1976)). In order to establish causation under a theory of vicarious liability, the plaintiff must show a causal relationship between the agent making the calls and the actions of the principle. *Freidman v. Massage Envy Franchising, LCC*, No. 3:12-CV-02962-L-RBB, 2013 WL 3026641, at *4 (S.D. Cal. June 13, 2013). For redressability, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' " *Lujan*, 504 U.S. at 561 (quoting *Simon*, 426 U.S. at 38, 43).

Here, Nano argues Brown's complaint fails for many of the reasons discussed above. First, the Complaint fails to plead causation. As explained above, the Complaint does not establish direct or vicarious liability because Brown fails to allege facts showing that Nano or an agent of Nano placed any of the calls. *See, e.g.*, *Freidman*, No. 3:12-CV-02962-L-RBB, 2013 WL 3026641, at *4 (finding no Article III standing where plaintiff did not plead direct or vicarious liability); *Biggins v. Wells Fargo & Co.*, 266 F.R.D. 399, 414 (N.D. Cal. 2009) (finding allegations that "all of the named Defendants engaged in the conduct alleged and caused each of them injury" and that one defendant "is an 'agent, subsidiary, parent, joint venturer or predecessor' " of another are insufficient for standing). Accordingly, Brown's injury is not fairly traceable to Nano. *Lujan*, 504 U.S. at 560–61 (citation omitted). Further, the absence of facts establishing this connection to Nano leaves room for a substantial possibility that any injury was "th[e] result [of] the

independent action of some third party not before the court." *Id.* (citation omitted).

Second, the Complaint also fails to plead redressability. Since the injury may have been caused by someone other than Nano, a decision favorable to Brown and against Nano would not necessarily redress the injury. *See Simon*, 426 U.S. at 41.

Since causation and redressability are speculative at best, Brown lacks standing.

## II. Injunctive Relief

Nano also argues Brown's Complaint lacks standing to seek injunctive relief. (ECF No. 6, 14–15.) In response, Brown argues the Complaint plausibly alleged future harm for purposes of injunctive relief. (ECF No. 7, 17–18.)

"[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) (citations omitted). For injunctive relief, the threat of injury must be "actual and imminent," or "*certainly impending*," not merely conjectural or hypothetical. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). "Allegations of possible future injury do not satisfy the requirements." *Whitmore*, 495 U.S. at 158. "Where standing is premised entirely on the threat of repeated injury, a plaintiff must show 'a sufficient likelihood that he will again be wronged in a similar way.'" *Davidson*, 889 F.3d at 967 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). "Past exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (citing *Lujan*, 504 U.S. at 560).

**\*8** Here, Brown requests injunctive relief in her Complaint. (ECF No. 1, 14, ¶ 60 ("Plaintiff and the class are also entitled to an injunction against future calls.").) However, Brown fails to allege any likelihood of future injury. The Complaint does not allege any facts regarding potential future calls. In addition, Brown alleges she received three calls within one month in 2023 and does not allege she has received any additional calls since then. (ECF No. 1, ¶¶ 30–32.) The timing and number of calls do not show "a sufficient likelihood that [s]he will again be wronged in a similar way." *Lyons*, 461 U.S. at 111; *see Koby v. ARS Nat'l Servs., Inc.*, 846 F.3d 1071, 1079 (9th Cir. 2017) ("The fact that a class member was a target of collection efforts sometime between 2008 and 2011, however, does not without more establish that he or she would likely be contacted by ARS again after October 2013."); *Miller v. Time Warner Cable Inc.*, No. 816CV00329CASASX, 2016 WL 7471302, at \*4 (C.D. Cal. Dec. 27, 2016) (granting motion to dismiss plaintiff's claims for injunctive relief because, without evidence to the contrary, "the risk [defendant] will continue to make unsolicited phone calls to plaintiff's phone is too speculative to establish a real or immediate threat of repeated injury."). Brown's conclusory argument in her Opposition that the Complaint "demonstrated a pattern of unlawful behavior that will not cease without court intervention" does not resolve the lack of any facts alleging that this pattern would continue. (ECF No. 7, 17.) Thus, Brown lacks standing to seek injunctive relief.

Accordingly, the Court **GRANTS** Nano's FRCP 12(b)(1) Motion to Dismiss with leave to amend.

## C. Motion to Strike class allegations under 12(f) and 23

Next, Nano moves to strike class allegations from the Complaint on two grounds. First, Nano argues Brown's class allegations should be stricken as overbroad. (ECF No. 6, 15–17.) Second, Nano argues Brown's class allegations should be stricken because Brown is not a member of the class she seeks to represent. (Id. at 17–18.) Brown responds to both arguments that "the class allegations have been sufficiently pled," "the proposed class may evolve throughout discovery," and regardless, the Court should not rule on class issues prior to a motion for class certification. (ECF No. 7, 18–19.)

### I. Sufficiency of Class Definition

A defendant may move to strike class allegations before discovery when the complaint shows a class action could not be maintained on the facts alleged. *Sanders*, 672 F. Supp. 2d at 990. "[N]o class may be certified that contains members lacking Article III standing." *Id.* at 991 (quoting

*Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006)). In *Sanders*, the court granted a motion to dismiss and struck class allegations under FRCP 12(f) because the class definition "include[d] all persons within the United States who own a 20–inch Aluminum iMac," which "necessarily include[d] individuals who did not purchase their 20–inch Aluminum iMac, individuals who either did not see or were not deceived by advertisements, and individuals who suffered no damages." *Id.* The court explained that "[s]uch individuals would lack standing to bring these claims." *Id.*

Here, the class definition is overly broad because it fails to exclude any members who may have consented to receiving phone calls from Nano. The TCPA expressly precludes claims made by individuals who consented to be called. 47 U.S.C. § 227(b)(1)(A) (excluding from liability any call "made with the prior express consent of the called party.") Brown's class definition necessarily includes any individuals who have consented to calls from Nano. (*See* ECF No. 1, ¶ 41.) Like in *Sanders*, these individuals would also lack standing. 672 F. Supp. 2d at 991; *see Hernandez*, No. 16CV200-LAB (JLB), 2017 WL 932198, at *6 (striking class allegations in part "[b]ecause the class definition includes insureds who were not injured at all.").

### II. Typicality

Rule 23(a)(3) requires that an individual plaintiff's claims be typical of those that the proposed class would advance. Fed. R. Civ. P. 23(a)(3). The test for Rule 23(a) typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011). "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *E. Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)).

**\*9** Here, Brown has not alleged that she falls into her own class definition. For the reasons discussed above, Brown failed to plead she was injured by Nano because the Complaint does not sufficiently allege the calls were made by Nano or its agent. As a result, her claims cannot be typical of those that the proposed class would advance, and other class members cannot "have been injured by the same course of conduct." *Ellis*, 657 F.3d at 984. Since the Complaint does not name any other plaintiffs, the purported class lacks typicality. *See Galan Segura v. CRST Van Expedited, Inc.*, No. EDCV1201901TJHSPX, 2014 WL 12567799, at *2 (C.D. Cal. June 16, 2014) (denying class certification in part for lack of typicality because the named plaintiff "has not suffered any injuries under the alleged [ ] violations ... and, therefore, is not a class member.").

Accordingly, the Court **GRANTS** Nano's FRCP 12(f) Motion to Strike class allegations with leave to amend.

### IV. CONCLUSION

For the reasons discussed above, Nano's Motion to Dismiss Brown's Complaint under FRCP 12(b)(6) and 12(b)(1) is **GRANTED.** Nano's Motion to Strike class allegations from the Complaint under FRCP 12(f) and 23 is also **GRANTED**. Brown has leave to file an amended complaint by August 6, 2024.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 3367536